# In the United States Court of Federal Claims

No. 22-135
Filed: August 8, 2024

| | |
|---|---|
| TYLER J. NORAGER, | ) |
| | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

*Sean J. Powell*, Faegre Drinker Biddle & Reath LLP, Chicago, Illinois, with whom were *Rochelle Bobroff*, *Esther Leibfarth*, and *Matthew Handley*, National Veterans Legal Services Program, Arlington, Virginia, of counsel, for Plaintiff.

*Domenique Kirchner*, Senior Trial Counsel, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia McCarthy*, Director, *Douglas K. Mickle*, Assistant Director, United States Department of Justice, and *Stacey R. Fernandez*, Captain, Judge Advocate, Litigation Attorney, U.S. Army Legal Services Agency, of counsel, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

## I.    Background

On February 9, 2022, Plaintiff, Tyler Norager, filed his complaint in this case.  ECF No. 1.  Norager alleged the Army wrongly denied him military disability retirement benefits and failed to refer him to the Disability Evaluation System ("DES").  *Id.*  Issues quickly arose. Within weeks of filing the administrative record, the Government moved to remand this matter to the Army Board for Correction of Military Records ("ABCMR") because it was not clear which version of governing regulations the ABCMR applied to Norager's claims.  *See* ECF No. 6.  The ABCMR did not indicate the date of the discharge regulations that it was applying.  In most cases this is not an issue because the default rule is that the regulations in effect at the time of a discharge apply to that discharge.  In this case, that was 2008.  But the ABCMR cited language from the regulation that was not added until 2009 without indicating that it was applying a subsequent version of the regulation.  Thus, it was unclear what version of the regulation the ABCMR was applying and why.  This prompted the Government's remand motion to allow the ABCMR to explain what version of the regulation it applied and why.

The Government also supported remand by identifying arguments that Norager made for the first time in this court, which this court could not hear but could be raised to the ABCMR on remand. ECF No. 9 at 1-2; *see also* ECF No. 13 at 9:7-10:18, 44:3-16, 46:3-47:2. There were also some arguments that were raised to the ABCMR that it did not clearly address. *Id.* at 38:9-40:24, 48:12-50:1. Norager opposed remand but argued that if the court did remand the case it should remand "the case for an MEB and PEB evaluation and determination consistent with the relief requested in SPC Norager's Complaint . . . ." ECF No. 8 at 17.

Following argument on the motion to remand, the court directed the parties to confer and propose instructions for a remand to the ABCMR. Both parties filed proposed remand orders. ECF No. 16. The court remanded the matter to the ABCMR with directions that borrowed "from both Norager's and the Government's proposed orders." ECF No. 17 at 2. The remand order recognized the court's concerns "regarding the ABCMR's not addressing nonfrivolous arguments Norager raised to it, the potential lack of a clear, reasoned explanation for the ABCMR's decision [i.e. which version of the regulation it applied], and the fact that Norager is making arguments here that he did not raise to the ABCMR, which this Court may not address." *Id.* at 1. And it directed the ABCMR to "reopen the record and provide Plaintiff with the opportunity to submit a new brief that contains all the claims, evidence, and arguments he wishes to raise to the ABCMR," to "identify the governing statutes and regulations applicable to Plaintiff's claims, and assess Plaintiff's claims under the applicable statutes and regulations," and to "provide a reasoned explanation for its conclusions," among other instructions. *Id.* at 2.

On remand, the ABCMR received new evidence, obtained a new medical advisory opinion, and provided a detailed opinion that granted Norager all the relief he sought. ECF No. 23 at 40.[1] Upon the filing of the ABCMR decision, the parties submitted a status report in which the Government explained it considered this action moot. While Norager urged the court to keep the matter open because although the ABCMR recommended certain changes to his record, those changes had not yet occurred. ECF No. 24. The court scheduled a series of status reports through which the parties' views remained unchanged. *See* ECF Nos. 25-28. The Government then moved to dismiss the complaint for mootness. ECF No. 29. Before Norager responded, the Army implemented the ABCMR's recommended changes to his record and the parties stipulated to dismissal on October 11, 2023. ECF No. 30. Norager then filed his motion for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), on November 10, 2023. ECF No. 31.

## II.    Discussion

Under EAJA, prevailing parties "may recover attorney's fees and costs from the Government" in certain circumstances. *Ardestani v. INS*, 502 U.S. 129, 132 (1991). EAJA provides:

> [A] court shall award to a prevailing party . . . fees and other
> expenses . . . incurred by that party in any civil action . . . brought
> by or against the United States in any court having jurisdiction of

_____

[1] Because ECF No. 23 contains several documents and is not consecutively paginated, the court cites to the pagination in the ECF Header.

that action, unless the court finds that the position of the United
States was substantially justified or that special circumstances
make an award unjust.

28 U.S.C. § 2412(d)(1)(A). EAJA requires the party seeking fees to submit an application for
fees "within thirty days of final judgment in the action . . . ." *Id.* § 2412(d)(1)(B). And the
application must demonstrate the party's eligibility and include "an itemized statement from any
attorney . . . representing . . . the party stating the actual time expended and the rate at which fees
and other expenses were computed." *Id.* EAJA defines "party" as "an individual whose net
worth did not exceed $2,000,000 at the time the civil action was filed . . . ." *Id.* § 2412(d)(2)(B).

So long as the timeliness and eligibility requirements are met, a party may recover fees
under EAJA if: "(1) the litigant is a prevailing party; (2) the position of the United States was not
substantially justified; and (3) special circumstances do not make the award unjust." *Crawford v.
United States*, 66 F.4th 1339, 1342 (Fed. Cir. 2023) (cleaned up). The party seeking fees "has
the burden of proving he is a prevailing party." *Davis v. Nicholson*, 475 F.3d 1360, 1366 (Fed.
Cir. 2007) (citing *RAMCOR Servs. Grp., Inc. v. United States,* 185 F.3d 1286, 1288
(Fed.Cir.1999)). And if the party satisfies this step, then "the burden shifts to the Government to
show that its litigating position was 'substantially justified.'" *Id.* As a partial waiver of
sovereign immunity, EAJA "must be strictly construed in favor of the United States." *Ardestani*,
502 U.S. at 137.

### A.    Norager timely filed his EAJA application.

EAJA requires parties to file a fee petition within 30 days of final judgment. 28 U.S.C.
§ 2412(d)(1)(B). Under EAJA, "final judgment" is "a judgment that is final and not appealable .
. . ." 28 U.S.C. § 2412(d)(2)(G). "[A] judgment does not become final for EAJA purposes until
. . . the time for an appeal has run." *Sabo v. United States*, 127 Fed. Cl. 412, 415 n.5 (2013)
(citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1369
(Fed. Cir. 2008)). Given the parties stipulated to dismissal in this case without prejudice or
explicitly preventing appeal, the court calculates the timeliness of an EAJA petition from the
date on which the right to appeal expired. *Accura Eng'g & Consulting Servs., Inc. v. United
States*, No. 22-1592C, 2024 WL 3093318, at *1 (Fed. Cl. June 21, 2024) ("Although the parties
stipulated to dismissal . . . the time to move for fees still runs from the date when the time to
appeal expired.") (citing *Impressa*, 531 F.3d at 1371 and *Bly v. Shulkin*, 883 F.3d 1374, 1376-77
(Fed. Cir. 2018)). Here, the parties filed their stipulation on October 11, 2023, and the court
dismissed Norager's complaint without prejudice the same day. *See* ECF No. 30. The time to
appeal expired on December 10, 2023 (60 days after stipulation of dismissal), meaning EAJA's
30-day clock began to run on December 11, 2023. Fed. R. App. P. 4(a)(1)(B). Therefore, the
last day Norager could have filed his EAJA application was January 10, 2024. 28 U.S.C.
§ 2412(d)(1)(B).

Norager filed his application on November 10, 2023. ECF No. 31. If anything, Norager
filed his EAJA petition too early. That is not problematic, however, because "courts generally
treat as timely EAJA applications filed even before a judgment becomes final." *Bly*, 883 F.3d at
1377 n.1 (citing *Brewer v. Am. Battle Monuments Comm'n*, 814 F.2d 1564, 1569-70 (Fed. Cir.
1987)). Given these precedents coupled with the fact that the Government does not challenge

Norager's filing on timeliness grounds, the court concludes that the early filing in this case does not impact Norager's eligibility. And now that the parties' time to appeal has expired, the court concludes that Norager's application is timely.

**B.     Norager sufficiently established his eligibility as a party under the statute.**

The court turns next to whether Norager qualifies as a "party" under EAJA. As relevant here, EAJA defines a "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed . . . ." 28 U.S.C. § 2412(d)(2)(B). Norager includes a declaration in which he states he satisfies this requirement. ECF No. 31-2 at 180.

Although most cases on this issue involve corporate or other legal entities, this court has addressed the issue as to individuals as well. The individual plaintiff cases (i.e., those brought by natural persons rather than by a corporate entity, partnership, etc.) regularly hold that a declaration may establish that a plaintiff meets EAJA's financial limitations and is sufficient unless the government disputes the plaintiff's eligibility. For example, in *Martinez v. United States*, 94 Fed. Cl. 176 (2010), the plaintiff certified his financial eligibility under EAJA—i.e., that his net worth was under $2 million. *Id*. at 181. The court concluded that this was sufficient given that the government did not challenge Mr. Martinez's eligibility. *Id*. at 181 n.7. Similarly, in *Sabo v. United States*, 127 Fed. Cl. 606 (2016), multiple plaintiffs supported their EAJA eligibility with declarations stating that they each had a net worth of less than $2 million, which the government did not dispute. Therefore, the court concluded that the *Sabo* plaintiffs satisfied the net worth requirement. *Id*. at 622. Had the government challenged Norager's eligibility, the court generally requires the plaintiff to provide supporting materials. *E.g.*, *Brass v. United States*, 129 Fed. Cl. 160, 164 (2016) ("In this case, the government specifically demanded additional 'evidence' of Ms. Brass's net worth."); *Doe v. United States*, 54 Fed. Cl. 337, 341 (2002) (requiring additional financial information because "Plaintiff's eligibility as a party was contested . . .").

Applying these cases here, the court concludes that Norager's uncontested declaration satisfies EAJA's net worth requirement given that the government has not disputed it nor sought additional financial information.

**C.     Prevailing party under EAJA.**

To be a prevailing party under EAJA, Norager "must 'receive at least some relief on the merits,' which 'alters the legal relationship of the parties.'" *Winters v. Wilkie*, 898 F.3d 1377, 1381 (Fed. Cir. 2018) (citing *Former Emps. of Motorola Ceramic Prod. v. United States*, 336 F.3d 1360, 1364 (Fed. Cir. 2003)). And "the material alteration of the legal relationship of the parties . . . must be marked by judicial imprimatur." *Id.* (cleaned up). While normally "remands to district courts do not constitute relief on the merits or otherwise confer prevailing party status . . . . in some cases, '[s]ecuring a remand to an agency can constitute the requisite success on the merits'" and confer prevailing party status. *Crawford*, 66 F.4th at 1342 (citing *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006)). For a remand to an agency to confer prevailing party status, the remand must be based on agency error. *Davis*, 475 F.3d at 1363-64. And the Federal Circuit has explained that when "a remand require[s] further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party

(1) without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court, or (2) when successful in the remand proceedings where there has been a retention of jurisdiction." *Ward v. USPS*, 672 F.3d 1294, 1299 (Fed. Cir. 2012) (citing *Former Emps.*, 336 F.3d at 1366); *Winters*, 898 F.3d at 1381 (same). Here, this court retained jurisdiction. And thus, to establish that he is a prevailing party under EAJA, Norager must show the remand was because of agency error and that he succeeded in the remand proceedings.

This case presents a number of thorny and close issues concerning whether Norager qualifies as a prevailing party. The court did not remand because of error, it remanded for the ABCMR to clarify its decision so that the court would not need to guess which version of the governing regulations the ABCMR was applying and why. And because the court was remanding without reaching the merits, it allowed Norager to add arguments to the ABCMR that he made to this court in the first instance. In the end, the court need not sort out these issues because, as explained below, even assuming that Norager was a prevailing party, the court concludes that the Government's position was substantially justified.

>    1.    The remand was not explicitly based on agency error.

A remand can be explicitly or implicitly based on agency error. And remands explicitly "based on our recognition of agency error from the record, as well as judicial findings or agency concessions of error," will "confer prevailing party status." *Crawford*, 66 F.4th at 1342 (citing *Davis*, 475 F.3d at 1364-65).

Here, the remand order was not explicitly based on agency error. The court did not find agency error or even reach the merits of Norager's arguments. ECF No. 17. Nor did the Government explicitly concede error. Rather, the Government explicitly disclaimed any error in its briefing. ECF No. 6 at 1 ("[T]he United States, without confessing error, and without waiving any defenses or objections to plaintiff Tyler J. Norager's claims, respectfully requests that the Court remand this matter . . . ."); *id.* at 9 (citation omitted) ("[A]n 'agency . . . may request a remand, without confessing error, to reconsider its previous position.' Our remand request is consistent with that principle."). Indeed, Norager acknowledges the lack of any explicit finding or concession of error, admitting: "this Court's Remand Order did not explicitly include a judicial finding of administrative error or a concession of error by the agency . . . ." ECF No. 39 at 1. Therefore, because Norager cannot establish that the remand was explicitly based on agency error, Norager can only be considered a prevailing party if the remand was implicitly based on error.

>    2.    The remand was not implicitly based on agency error.

When the remand does not contain an explicit judicial finding or agency concession of error "the default rule is that the remand is not based on administrative error' and the burden is on the EAJA applicant 'to prove, based on the record, that the remand had to have been predicated on administrative error even though the remand order does not say so.'" *Crawford*, 66 F.4th at 1342 (quoting *Davis*, 475 F.3d at 1366). In determining whether a remand is based on error, the court "is not limited to the four corners of the Remand Order," but "looks to the context of the full record to make such a determination." *Martinez v. United States*, 94 Fed. Cl. 176, 182 (2010) (citing *Davis*, 475 F.3d at 1365). And "courts are not bound by a party's

5

*characterizations* of its conduct in determining whether there has been a concession of error. It is the substance of the government's admissions that matter." *Crawford*, 66 F.4th at 1344 (emphasis in original).

Courts may find a remand is implicitly based on agency error when "the substance of the government's admissions amounts to an implicit concession of error . . . ." *Id.* In *Crawford*, the Federal Circuit held that because the government repeatedly admitted that it failed "to provide Mr. Crawford with the process he was due either at the time of his discharge or during the pre-remand ABCMR proceedings" the remand was "implicitly predicated on agency error." *Id.* at 1343. Although the government disclaimed error and the reason stated for the remand was judicial efficiency, the Circuit found "[b]ut for this error, there would be no judicial efficiency in remanding" and "[i]f proper procedures had been followed," plaintiff would have already received the relief requested. *Id.* Along with remands based on an agency's failure to follow the law, remands based on the agency's prior failure to consider necessary evidence also indicate the remand was implicitly based on agency error. *See Davis*, 475 F.3d at 1365 (citing *Kelly*, 463 F.3d at 1354-55) ("In *Kelly*, the agency error, although not explicitly stated in the ataxia remand order, was nevertheless clear from the record, namely that the Department of Veterans Affairs ("VA") had ignored evidence before it of Kelly's ataxia disorder in the service connection analysis.").

But remands that are not predicated on agency error do not confer prevailing party status. This includes "remands for the consideration of new evidence discovered for the first time during appeal," "remands to consider the effects of intervening new law," and remands that "merely afforded [the plaintiff] an opportunity to litigate again . . . ." *Davis*, 475 F.3d at 1364-66 (citations omitted); *see also Vaughn v. Principi*, 336 F.3d 1351, 1356-60 (Fed. Cir. 2003) ("Appellants' remands . . . provide only the opportunity for further adjudication . . . . their request for attorney fees is for an intermediate event that did not involve a merit determination, in Vaughn's case a change in law and in Sumner's case the discovery of new evidence . . . ."); *Robinson v. O'Rourke*, 891 F.3d 976, 982-84 (Fed. Cir. 2018) ("Robinson is not a prevailing party . . . . the court merely allowed Robinson to submit additional evidence to the Board in support of its new argument."). Indeed, if the remand to the agency is "because of an external event, such as a change in the law or discovery of new evidence, the party has not 'prevailed' for purposes of EAJA." *Martinez*, 94 Fed. Cl. at 182.

Likewise, "remands based 'solely' on judicial efficiency do not confer prevailing party status." *Crawford*, 66 F.4th at 1343 (citing *Gurley v. Peake*, 528 F.3d 1322, 1324 (Fed. Cir. 2008)). And without recognition of error, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" in the parties' legal relationship that is necessary to confer prevailing party status. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). The government's "motivations for changing its conduct—in particular, the desire to avoid a litigation loss" is also "legally insufficient to create prevailing-party status." *Cavaciuti v. McDonough*, 75 F.4th 1363, 1367 (Fed. Cir. 2023).

With this background in mind, the court must determine whether the remand in this case is more akin to the *Crawford* and *Kelly* cases where the remands were implicitly based on the agency's error or the *Davis*, *Vaughn*, and *Robinson* line of cases where the remands were based

on other motivations like affording plaintiff the chance to raise new arguments. The remand here falls into the latter category.

> a)    *The remand was based in part on affording Norager the chance to raise new arguments and obtaining a clearer decision from the ABCMR.*

In this case, there were several reasons that the court issued the remand. First, the government sought a remand so that the ABCMR could clarify the version of the regulations that it was applying to Norager's claim. As the Government explained, the general rule is that the military applies the regulations in place at the time of a soldier's discharge. ECF No. 6 at 7 (citing *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005)) ("A discharge decision must be based upon the versions of the regulations that were in effect at the time of Mr. Norager's discharge in 2008."). In the ABCMR's decision, however, it states that it is applying Army Regulation 635-200, but did not identify the version of the regulation it was applying. When the ABCMR quoted language from AR 635-200, it quoted language that did not appear in the regulation in 2008 when Norager left the Army. This language came from a subsequent version of the regulation, although it is not clear which one.[2] ECF No. 36 at 15. To clarify the version of the regulation that the ABCMR applied, the Government sought the remand.

The court agreed that this ambiguity justified remand. ECF No. 17 at 1 ("During the hearing on this matter, the Court made clear the concerns it has regarding the . . . the potential lack of a clear, reasoned explanation for the ABCMR's decision . . . ."); *id.* at 2-3 ("The ABCMR will identify the governing statutes and regulations applicable to Plaintiff's claims, and assess Plaintiff's claims under the applicable statutes and regulations. If, in the interests of justice, the ABCMR determines that a later version of a regulation that was not in effect at the time of Plaintiff's discharge should be applied to Plaintiff's claims, the ABCMR should so state and explain how the regulation applies . . . . The ABCMR shall provide a reasoned explanation for its conclusions.").

That said, this ambiguity does not help Norager establish that he is a prevailing party. As an initial matter, Norager objected to the remand on this basis. ECF No. 8 at 7-11. And he appears to have been at least a contributing cause of this confusion given that he briefed the subsequent version of the regulation to the ABCMR. ECF No. 36 at 14 ("At the ABCMR Norager's memorandum had asserted that the Army violated the regulations that were effective at the time of his separation . . . . However, his memorandum quoted a version of Army Regulation 635-200 that was not in effect at the time of his separation."). In other words, Norager appears to have (almost certainly inadvertently) contributed to the confusion surrounding which version of AR 635-200 the ABCMR should apply to his claims. Given Norager's opposition to remand on this ground and shared confusion, it does not support his prevailing party status.

Second, the court remanded because Norager raised arguments to the court that he had not raised to the ABCMR in the first instance. As the Government emphasizes: "Mr. Norager's complaint raised a new contention that he had failed to raise with the ABCMR, i.e., the Board

---

[2] The language at issue appears in each subsequent version of Army Regulation 635-200, beginning in 2009.

should apply the 2009 version of Army Regulation 635-200, Chapter 5-17 that did not exist at the time of his separation." ECF No. 36 at 17; *id.* at 15 ("Mr. Norager's complaint contended for the first time that 'it would be manifestly unjust for a combat veteran like [him] not to receive the benefit of the 2009 version of 5-12 just because he was discharged' in 2008.") (citations omitted). The remand order explicitly recognized that "Plaintiff is making arguments here that he did not raise to the ABCMR, which this Court may not address." ECF No. 17 at 1. And it accordingly directed:

> The ABCMR shall reopen the record and provide Plaintiff with the opportunity to submit a new brief that contains all the claims, evidence, and arguments he wishes to raise to the ABCMR . . . . The ABCMR shall consider all the claims, evidence, and arguments Plaintiff raises in his new brief and any subsequent pleadings . . . .

*Id.* at 2.

This does not make Norager a prevailing party. *Robinson* and other cases make clear that when the remand is based on affording the plaintiff the opportunity to raise new arguments, the remand is not based on error and a plaintiff cannot be considered a prevailing party. *Robinson*, 891 F.3d at 978; *see also Davis*, 475 F.3d at 1366 ("Because there is no judicial finding of agency error or concession of agency error and because the record is not clear, we hold that Davis failed to prove that the remand was based on administrative agency error . . . . Davis is not a prevailing party for EAJA purposes. The remand merely afforded Davis an opportunity to litigate again . . . ."); *Winters*, 898 F.3d at 1384 (citing *Akers v. Nicholson*, 409 F.3d 1356, 1360 (Fed. Cir. 2005)) ("Winters is also not a prevailing party . . . . Here, the Veterans Court merely afforded Winters an opportunity to have her otherwise finally denied claims reconsidered . . . . As we have previously observed, '[a] boxer thrown out of the ring and then allowed back in to continue the fight has not prevailed.'"); *Yates v. Nicholson*, 140 F. App'x 954, 954 (Fed. Cir. 2005) ("The Court of Appeals for Veterans Claims correctly determined that Yates was not a prevailing party for EAJA purposes. Yates did not in any way prevail on the merits of his case; he was merely granted the opportunity to raise a new argument before the Board."); *Howell v. United States*, No. 20-735C, 2023 WL 1860969, at *1 (Fed. Cl. Feb. 9, 2023) ("The Court's remand order did not find error or reach the merits of Plaintiff's claims in any way. Rather, the Court remanded for consideration of all issues based on any new evidence the parties wished to provide. That does not make Plaintiff a prevailing party.").

Third, and finally, the court remanded in part so that the ABCMR would fully address all nonfrivolous arguments Norager had raised. The court discussed this issue at oral argument, ECF No. 13 at 38:9-40:24, 48:12-50:1, and the remand order likewise "made clear the concerns it has regarding the ABCMR's not addressing nonfrivolous arguments Norager raised to it . . . ." ECF No. 17 at 1; *id.* at 2 ("The ABCMR shall address all nonfrivolous arguments raised in Plaintiff's new brief and any subsequent pleadings, and if it concludes that an argument is frivolous, the ABCMR should state why the argument is frivolous . . . ."). That said, the court did not remand "the case for an MEB and PEB evaluation and determination consistent with the relief requested in SPC Norager's Complaint[,]" as Norager requested. ECF No. 8 at 17. This is where the analysis gets somewhat complicated. It is unclear whether this the third motivation for

remand would be considered a recognition of implicit error by the Government or a recognition for why remand would be judicially efficient. *Cf. Davis*, 475 F.3d at 1366 ("Because there is no judicial finding of agency error or concession of agency error and because the record is not clear, we hold that Davis failed to prove that the remand was based on administrative agency error . . . ."). Indeed, if the ABCMR failed to address arguments Norager made to it, that could be seen as error and the court's remand a finding of such error. Regardless, even if this partial motivation for remand is enough to be considered an implicit error, as explained below, the Government was substantially justified in its position before and during litigation. Therefore, the court does not delve further into this issue.

> b)      *The Government never implicitly conceded error.*

Norager also argues that "the substance of the Government's arguments amounts to an implicit concession of error in failing to refer SPC Norager into DES." ECF No. 31-1 at 15. He alleges "the Government never disputed that the Army and ABCMR failed to follow their own regulations and procedures in administratively separating SPC Norager" and the Government "acknowledged that the ABCMR was required to follow the Kurta Memo . . . which the ABCMR failed to do in its first decision." *Id.* As an initial matter, the Government consistently disputed that it failed to follow regulations and procedures with respect to Norager. It never confessed any error or made an implicit admission it failed to follow applicable regulations. ECF No. 6 at 1, 9. Essentially all the Government admitted to was that it was unclear what version of the Army regulation the ABCMR applied. *Id.* at 7.

The Government also explicitly disputed that it failed to follow the Kurta Memo's guidance. In its briefing, the Government explained the Kurta Memo's impact on the ABCMR's decision, stating:

> The Kurta Memo instructs the ABCMR that '[l]iberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions['] . . . . That memo, which the ABCMR briefly referenced (AR 8-9), combined with the ABCMR's mandate to correct injustices in military records (32 C.F.R. 581.3(b)(4)), conceivably might have moved the ABCMR to apply a later version of Army Reg. 635-200 in its decision.

ECF No. 9 at 5. The court discussed the Kurta Memo's application with the Government at the hearing and the Government did not concede error there either. ECF No. 13 at 41:2-25, 42:1-9. While the court recognized the lack of clarity concerning the Kurta Memo's application, it did not find the Government failed to follow the Kurta Memo or reach the merits on this issue at the hearing or in the remand order. Indeed, the only thing the court could possibly find fault with the ABCMR's application of the Kurta Memo is its direction to consider how someone discharged today would be treated under the regulations. But the court cannot conclude based on this record that the ABCMR did not do so. Indeed, it appeared to rely on language from the governing Army Regulation (Army Regulation 635-200, Chapter 5-17 (2009)) that was added to the regulation *after* Norager's discharge. If anything, it is unclear that the ABCMR applied the regulation that was in place at the time of Norager's separation, which may run afoul of

*Chambers*, but not the Kurta Memo. And the court can discern no way in which Norager was harmed or could show prejudice from this. Indeed, Norager objected to remand because he argued it was futile given that if he did not get relief under the post-2009 regulation, he could not get relief under the pre-2009 regulation. ECF No. 8 at 9 ("Indeed, if the ABCMR denied SPC Norager's claim under the 2009 amendment to Chapter 5-17, it necessarily follows that the ABCMR will reach the same conclusion under the more lenient 2005 version of that regulation.").

Norager additionally points to the fact that ABCMR's decision granted him "'full relief' on the merits of his claims" and that on remand the ABCMR recognized that he "should have been referred to the Disability Evaluation System . . . ." ECF No. 31-1 at 16 (citations omitted). While Norager did eventually receive the relief he sought, it is well-established that the Government's "voluntary change in conduct" alone is not sufficient to confer prevailing party status. *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 605. Indeed, "an award of a benefit by the agency alone, even if prompted by the litigation, is insufficient without a judicial imprimatur." *Cavaciuti*, 75 F.4th at 1367. As the remand here did not recognize agency error, the ABCMR's change in conduct on remand was voluntary. Thus, the ABCMR's decision on remand does not establish that Norager was a prevailing party.

Finally, Norager argues that *Crawford* controls this case and "is directly on point." ECF No. 39 at 3. But there are key differences between this case and *Crawford*. Unlike in *Crawford*, here, Norager raised new arguments to the court that he had not raised before the agency. And unlike *Crawford*, the Government did not implicitly concede that it failed to provide Norager with the process he was due. The reasons for the Government's requested remand here were not based on implicit admissions of legal error, but on judicial economy and a willingness to allow Norager an opportunity to present new arguments. And rather than the remand being a "[b]ut for" result of the agency's legal failure to follow the proper procedures, *Crawford*, 66 F.4th at 1343, here, the remand was in part to allow Norager to have an opportunity to raise his new arguments and ensure the ABCMR decision was clear for judicial review.

Norager's case is more comparable to *Robinson*, in which the plaintiff raised an argument "for the first time" to the Veterans' Court that he had not previously presented to the Board of Veterans' Appeals. *Robinson*, 891 F.3d at 978. And as the Government did here, there, the government recognized a clarity issue with the underlying agency decision. It admitted: "that the record was unclear as to whether the VA or Robinson caused the fourteen-month delay in scheduling the medical tests." *Id.* The Veterans Court "exercised its discretion not to apply issue exhaustion, and permitted Robinson to make his belated argument" on remand. *Id.* After the remand, plaintiff moved for attorney's fees under EAJA. The Federal Circuit found "[t]he remand at issue was not predicated on administrative error" because the court "did not address the merits of Robinson's appeal, much less identify any error committed by the Board," and "merely allowed Robinson to submit additional evidence to the Board in support of its new argument." *Id.* at 982-84.

### D.     The Government's position was substantially justified.

Assuming Norager was a prevailing party, the court would not award attorney's fees because the Government's position was substantially justified. A position is substantially if it is

"justified to a degree that could satisfy a reasonable person." *Crawford*, 66 F.4th at 1345 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  When determining whether the government's position was substantially justified, courts must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).  The government bears the burden of proving its position is substantially justified.  The government must "show it has not persisted in pressing a tenuous factual or legal position." *Crawford*, 66 F.4th at 1345 (citing *Gavette v. Off. of Pers. Mgmt.*, 808 F.2d 1456, 1467 (Fed. Cir. 1986)).  "[T]he government's position need not be 'correct,' or even 'justified to a high degree.'" *Norris v. SEC*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (*Pierce*, 487 U.S. at 566 n.2).  And "[t]his standard does not 'raise a presumption that the Government position was not substantially justified, simply because it lost the case.'" *Id.* (citing *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1391 (Fed. Cir. 1982); *RAMCOR*, 185 F.3d at 1290 ("[O]utcome does not alone show that [the Government's] position had no substantial justification.").

    1. <u>The ABCMR's 2020 decision was substantially justified.</u>

  The ABCMR's 2020 decision, which determined Norager's administrative discharge was not erroneous or unjust, was justified to a degree that could satisfy a reasonable person.  It had a reasonable basis in both the facts before it and the law at the time.  In that decision, the ABCMR obtained an advisory opinion from an Army Review Boards Agency psychologist who reviewed Norager's application and medical records.  The advisory opinion considered the "Sep 2014 Secretary of Defense Liberal Guidance Memorandum and the 25 Aug 2017, Clarifying Guidance, [Kurta Memo]," observed that "[t]here was no report of inability to perform his [Norager's] duties at work but rather he had no desire to continue to serve in the military," and concluded referral to the Disability Evaluation System was not warranted.  ECF No. 5 at AR 49.

  The advisory opinion relied heavily on the conclusions of one of Norager's treating doctors during his time on active duty, Dr. Johnson.  Dr. Johnson "strongly recommended [Norager] for administrative discharge . . . for a diagnosis of adjustment disorder with anxiety and depressed mood."  ECF No. 36 at 28-29 (citing ECF No. 5 at AR 119).  According to Dr. Johnson, Norager met the army's "retention standards" and had "no psychiatric disease or defect which warranted disposition through medical channels."  ECF No. 5 at AR 119.

  Relying on these analyses, the ABCMR recognized Norager's "in-service diagnoses of PTSD," but "also noted the multiple situational stressors described in the advisory opinion (i.e., marital stress, denial of a request for early release to attend school, and general dissatisfaction with the Army.[)]"  *Id.* at AR 21.  The ABCMR concluded the administrative discharge was not erroneous or unjust and explained that it found "neither [counsel's contentions and the applicant's post-service medical history] to be compelling to a degree that would lead the Board to question the judgment of the provider who, at the time of his discharge, evaluated him and determined he met retention standards."  *Id.*  The ABCMR based its decision on Dr. Johnson's diagnosis and the medical advisor's opinion.

  Norager argues the ABCMR's reliance on Dr. Johnson's analysis was not substantially justified.  He emphasizes that at the time of Dr. Johnson's analysis "over *twenty* other medical opinions" found SPC Norager had PTSD" and that these should have been considered more

substantially.  ECF No. 39 at 9 (emphasis in original).  But the ABCMR expressly recognized and considered Norager's PTSD.  It is not for this court to dictate to the ABCMR or its medical advisors the relative weight they should assign to various medical evidence unless such weight is arbitrary or capricious.  It is for this court to ensure that they do so rationally, which they did in this case.  Indeed, the relevant army regulation instructed that "[t]he mere presence of impairment does not, of itself, justify a finding of unfitness because of physical disability" and "[i]n each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the soldier reasonably may be expected to perform because of his or her office, grade, rank, or rating."  ECF No. 5 at AR 5 (citing Army Regulation 635-40).  Thus, under this regulation, the ABCMR had a reasonable basis in concluding that an administrative discharge was not erroneous or unjust based on Dr. Johnson's diagnoses and the medical advisor's opinion.

Moreover, Dr. Johnson specifically concluded shortly before his discharge that Norager satisfied the Army's retention standards.  *Id.* at AR 119.  The advisory opinion similarly found that Norager satisfied retention standards and that other stressors (i.e., not PTSD) were having a significant impact on Norager at the time.  *Id.* at AR 49.  It observed "[t]here was no report of inability to perform [Norager's] duties at work but rather he had no desire to continue to serve in the military"; "[t]here was significant marital issues"; and "[w]hile he has a service connected disability rating of 100% for PTSD, he has been employed as a GS civilian fuels systems mechanic for the past 6 years.  In addition, per his most recent annual physical his PTSD symptoms are under treatment and currently stable."  *Id.*  Similarly, the ABCMR observed that none of the behavioral health providers Norager contacted during his service "recommended he be referred to a Medical Evaluation Board."  *Id.* at AR 21.

Before the ABCMR, Norager argued it was unreasonable to rely on Dr. Johnson because he did "not consider[] whether 'PTSD, TBI, and/or other comorbid mental illness may be significant contributing factors to the [adjustment disorder] diagnosis."  ECF No. 5 at AR 32, 70.  But, as the Government points out, the Army did not add the regulatory requirement for such an analysis until December 17, 2009.  ECF No. 36 at 14 (citing Army Regulation 635-200 (Dec. 17, 2009)).  And "[t]he court cannot fault [Dr. Johnson] for not conducting an analysis that the relevant regulation did not explicitly require him to conduct at the time of his decision."  *Draper v. United States*, 163 Fed. Cl. 284, 294 & n.3 (2022).  This is because the Federal Circuit has made clear that "Army regulations in effect at the time of [a service member's] discharge . . . rather than current regulations, guide our analysis."  *Chambers*, 417 F.3d at 1227.  Thus, Norager's argument that the ABCMR unreasonably relied on Dr. Johnson's analysis and ignored other medical opinions fails.  The ABCMR did not dispute that Norager had PTSD and addressed his fitness reasonably under the relevant regulations.

Finally, although the ABCMR later changed its position and granted Norager all the relief he sought on remand from this court, that is not enough to demonstrate the Government's prior position was not substantially justified.  *Norris*, 695 F.3d at 1265; *RAMCOR,* 185 F.3d at 1290.  There was additional evidence and new Federal Circuit precedent before the ABCMR in 2023 that contributed to the change.  As the Government points out, the record evidence before the ABCMR for its original decision "differed markedly from the record evidence for the March 2023 ABCMR decision."  ECF No. 36 at 28.  And the ABCMR "did not have the benefit" of *Doyon v. United States*, 58 F.4th 1235 (Fed. Cir. 2023) or *LaBonte v. United States*, 43 F.4th

1357, 1367-68 (Fed. Cir. 2022), relevant Federal Circuit precedent that "clarified the applicable law for correction boards considering veterans' applications for correction of their military records, including the reasons for their discharge." *Id.* at 30-31.

Additionally, on remand, the ABCMR obtained an entirely new advisory opinion from a different agency medical advisor that determined the ABCMR should refer Norager to DES. ECF No. 36-1 at 323-26. The second advisory opinion looked at the new record evidence, including post-2020 information from the VA, and made a different judgment call than the 2020 medical advisor. But the new medical advisor did not conclude that the prior advisory opinion was clearly erroneous; rather, he stated that "[g]iven the above information, *it is with an abundance of caution* that this advisor recommend that the Board consider referring the case to DES for consideration." *Id.* at AR 325 (emphasis added).

Norager attempts to discount the additional evidence and the effect of *Doyon* and *LaBonte* on the ABCMR's remand decision. He argues that the new evidence did not play "any discernable role in convincing the ABCMR on remand to no longer rely on Dr. Johnson's opinion," ECF No. 39 at 9, and that the Federal Circuit decisions only "reaffirmed that the existing law of liberal consideration applied to medical retirement; neither case created new law." *Id.* at 10. But these arguments do not convince the court that the ABCMR's prior opinion did not have a reasonable basis in law and fact. When determining whether the Government's position is substantially justified, "the Court does not examine defendant's stance on every individual issue addressed in the case. Instead, the Court's task is to evaluate, based upon the totality of the circumstances, whether defendant's overall position was substantially justified." *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999). And the fact remains that in 2023, the ABCMR considered new arguments and new evidence from Norager at a time where the law on correction of military records was more developed than it had been at the original decision. *See Kay Mfg. Co. v. United States*, 699 F.2d 1376, 1379 (Fed. Cir. 1983) ("Justification for the government's position at trial and on appeal must be measured against the law as it existed when the government was litigating the case . . . ."); *Keely v. MSPB*, 793 F.2d 1273, 1276 (Fed. Cir. 1986) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)) ("The Supreme Court has cautioned that '[a] request for attorney's fees should not result in a second major litigation.'"). A change in position is certainly reasonable under these circumstances.

### 1.   The Government's position supporting a voluntary remand was substantially justified.

The Government's position seeking a voluntary remand was also substantially justified given the confusion surrounding what regulation applied and the new arguments Norager raised before this court. As the Government emphasizes, there was confusion as to which regulation was applicable in the original decision—partially because Norager cited to a version that was not in effect. ECF No. 36 at 14. The Government explains that "[a]t the ABCMR Norager's memorandum had asserted that the Army violated the regulations that were effective at the time of his separation . . . . However, his memorandum quoted a version of Army Regulation 635-200 that was not in effect at the time of his separation." *Id.* And to further complicate the matter, in the underlying decision, it was unclear which Army regulations the ABCMR applied because "[t]he ABCMR's decision, just like Mr. Norager's memorandum, quoted a version of Army

Regulation 635-200, Chapter 5-17 that did not exist at the time of Mr. Norager's discharge." *Id.* at 15.

Moreover, as explained above, Norager raised new arguments before this court that were not squarely put before the ABCMR when it rendered its 2020 decision: that, in the interests of justice, "the Board should apply the 2009 version of Army Regulation 635-200, Chapter 5-17 that did not exist at the time of his separation." *Id.* at 17.  It is well established that when evaluating a military correction board's decision, "the court may not consider new arguments not raised before the Board." *Exnicios v. United States*, 140 Fed. Cl. 339, 364 (2018) (citation omitted).  And the Government did not object to Norager raising this or any other new argument he wished before the ABCMR on remand.  In other words, in seeking remand and not objecting to Norager raising new arguments, the Government was acting reasonably.

Even though the ABCMR reversed its 2020 decision in its 2023 decision, the record indicates to this court that the ABCMR acted reasonably in its conduct toward Norager both in the administrative proceedings and before this court.  Therefore, the Government has carried its burden to show that its conduct has been substantially justified during this litigation and before it.

## III.   Conclusion.

For the reasons stated above, the court denies Plaintiff's motion for attorney's fees under EAJA, ECF No. 31.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge